■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVIS COLLIER, JR., Appellant. — Appeal by defendant from a judgment of the County Court, Nassau County (Thorp, J.), rendered July 1, 1982, convicting him of criminal sale of a controlled substance in the third degree and attempted criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence.

Judgment affirmed.

On April 18, 1981, at about midnight, four off-duty Nassau County police officers, Freund, Graziano, Oddo and Amberman,

together with Detective Sergeant Kuhnle, were socializing at September's Bar in Seaford.

Defendant started conversing with Officer Oddo, who was sitting at the bar, and offered to sell him some cocaine. Officer Oddo declined, saying that perhaps his friend would want some. Oddo went to the rear of the bar and, after consulting with Officers Freund and Graziano and Detective Sergeant Kuhnle, it was decided that Oddo would introduce Graziano to defendant and that Graziano would buy the cocaine.

After Officer Oddo introduced Officer Graziano to defendant, Graziano and defendant engaged in a conversation during the course of which defendant asked Graziano if he was interested in purchasing some cocaine from him. Defendant also asked Graziano if he carried a gun. Graziano said that he did not. Defendant said, "Well, I want you to see something", and, taking the officer's hand, placed it in the boot area of his left leg. Officer Oddo heard defendant ask if Graziano had a gun and saw the latter reach down and touch defendant's left boot.

When Officer Graziano placed his hand on the defendant's leg, he felt a firearm. Graziano told defendant that he did not like to fool around with guns, and left defendant so that he could inform the other policemen that defendant had a gun. Officer Graziano left the bar and walked around the building. He saw defendant walking from the vicinity of the trunk of a car to the door on the passenger's side. He saw defendant open the passenger's door and put his foot up on the seat, and saw that he had his hand near his boot.

After he saw Officer Graziano leave the bar, Officer Oddo waited a few moments and then followed. He saw defendant opening a car door. As the officer watched, defendant placed his left foot on the running board of the car, lifted up his pants' leg, removed something from his boot and placed it on the front floor on the left side of the car. Based on the conversation which he had overheard, Officer Oddo believed that defendant was removing a gun from his boot. Then Oddo saw defendant close the car door, and the officer went back into the bar.

Shortly after, defendant also went back into the bar. Defendant approached Officer Oddo upon entering the bar, and asked him what was wrong with his friend. Oddo said that he did not know and asked what defendant was talking about. Defendant said that Graziano "took off" when he had seen defendant's gun. Officer Oddo said that he guessed that his friend did not like guns. Then, Oddo saw Officer Freund walk into the rear of the bar from the kitchen, so he excused himself, and walked over to Freund.

The officers formulated a plan to buy some cocaine. In accordance with that plan, Officer Oddo returned to his original spot at the rear of the bar where defendant was standing while Officer Freund went into the men's room. Oddo asked defendant if he still had the cocaine, and defendant said that he did. They proceeded to the bathroom to make the transaction. Freund, who was waiting in the bathroom, heard Oddo and defendant talking, and saw defendant remove something from his pocket and hand it to Oddo. Freund then arrested defendant.

Officer Freund frisked defendant, but did not find a gun on defendant's leg. While Officer Freund was involved with defendant, Officer Oddo went to the car by which he had seen defendant standing earlier. He opened the driver's door, saw a .22 caliber revolver on the left front floor and took it.

Defendant has no standing to challenge the seizure of the gun because he has made no showing that he had a reasonable expectation of privacy in the automobile from which the gun was seized, as it was his burden to do (*Rawlings v Kentucky,* 448 US 98, 104; *People v Ponder,* 54 NY2d 160, 166).

However, even assuming that defendant did have standing to challenge the search, the search was valid. The search was very similar to the warrantless search of the parked car which was found to be valid by the Court of Appeals in *People v Orlando* (56 NY2d 441). The court listed the factors to consider: "the proximity of the vehicle to the point of arrest and the closeness of the search to the time of arrest and the probable cause which * * * the detectives had for conducting the search" (*People v Orlando, supra,* p 446).

In *Orlando* (*supra*) the car was parked outside the pharmacy in which the defendant had been arrested. Here, the car was parked outside the bar in which defendant was arrested. In *Orlando* the search of the car occurred about 15 minutes after the defendant's arrest. Here, the search also took place a very short time after the arrest. There was probable cause for Officer Oddo to conduct the search based on defendant's statements to Oddo that he had a gun, Officer Graziano's statements that he felt defendant's gun, and Officer Oddo's observance of defendant removing something from his boot, where the gun was alleged to have been, and placing it on the car floor. "[A] valid arrest for a crime authorizes a warrantless search — for a reasonable time and to a reasonable extent — of a vehicle * * * [when] there is reason to believe that a weapon may be discovered" (*People v Belton,* 55 NY2d 49, 54-55). The search and seizure in this case was therefore valid, and defendant's conviction should be affirmed. Gibbons, J. P., O'Connor, Niehoff and Lawrence, JJ., concur.