■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MORRIS DI LUCCHIO, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, (Groh, J.), rendered November 2, 1984, convicting him of criminally negligent homicide (two counts), assault in the second degree and leaving the scene of an accident without reporting, as a felony, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial (Eiber, J.), after a hearing, of that branch of defendant's pretrial motion as sought suppression of physical evidence and statements.

Judgment affirmed.

Following an automobile collision in which two people died and another person was seriously injured, defendant, the alleged driver of the offending automobile, was indicted, *inter alia,* for criminally negligent homicide, assault in the second degree and leaving the scene of an accident without reporting, as a felony, and was subsequently convicted of these crimes. On this appeal, defendant contends that the judgment of conviction must be reversed because, *inter alia,* the hearing court erroneously denied, for lack of standing, that branch of his motion which was to suppress the seized automobile. We cannot agree with this contention.

Officer Frederick, the sole witness at the pretrial hearing, testified that, following the accident at 10:30 A.M., on February 21, 1983, he was furnished with a description of the offending vehicle as a 1974 gray Chevrolet with plates 435 JXC registered to one Morris Di Lucchio and proceeded to the latter's address on February 23, 1983 at approximately 6:30 to 7:00 P.M. Having observed the subject vehicle parked on the public street with damage to the front right headlight area and with what appeared to be brown paint from the vehicle struck in the accident on the front right bumper, he rang the Di Lucchio doorbell. Officer Frederick further testified that Morris Di Lucchio, Sr., who answered the door and admitted him, acknowledged that he was the owner of the Chevrolet parked outside. Frederick then "inquired of him as to who had possession of that vehicle on the morning of February 21st. And he informed me that his son had possession of the vehicle, that he uses it to go to work". According to Frederick, defendant, who at some point entered the room, admitted driving the car near the scene of the accident on the morning of February 21, denied being involved in the subject accident, but acknowledged that the car was hit that morning while parked. Officer Frederick then asked Morris Di Lucchio, Sr., to accompany him outside to observe the damage to the

vehicle. Once outside, Morris Di Lucchio, Sr., touched the brown paint on the bumper and appeared to scratch it. Thereupon, Officer Frederick requested that he not touch the evidence and informed him that he had probable cause to believe this was the vehicle involved in the accident and would impound it. Upon request, Morris Di Lucchio, Sr., then supplied the car keys to the officer, after having retrieved some belongings from the vehicle.

Preliminarily, it bears noting that we are concerned here with defendant's standing to challenge the police seizure of the vehicle. There is no serious issue as to whether Officer Frederick's preseizure visual inspection of the car parked on the public street violated constitutional search and seizure standards, for "[w]hat a person knowingly exposes to the public * * * is not a subject of Fourth Amendment protection" *(Katz v United States,* 389 US 347, 351; *see also, People v Buggenhagen,* 57 AD2d 466, 468). Turning to the issue of "standing", or more properly phrased, a basis to claim that one's own personal 4th Amendment rights were involved *(see, Rakas v Illinois,* 439 US 128, 139-141; *People v Hudson,* 112 AD2d 650), it is now the law that there is no "automatic standing" in search and seizure cases and that in order to have "standing" to challenge a seizure, a defendant must demonstrate a reasonable expectation of privacy in the property seized *(see, United States v Salvucci,* 448 US 83; *Rawlings v Kentucky,* 448 US 98, 105; *People v Ponder,* 54 NY2d 160; *People v Cacioppo,* 104 AD2d 559).

It is uncontested that defendant's father owned the vehicle in question and it was seized on the public street two days after the accident at approximately 7:00 P.M. At the suppression hearing, defendant offered no evidence and called no witnesses. The only evidence tending to establish a connection between defendant and the vehicle was the testimony of the sole hearing witness, Officer Frederick, who testified for the People to the effect that (1) defendant stated he was driving the car on the morning of the accident, and (2) defendant's father stated "that his son had possession of the vehicle on the morning of February 21st, that he uses it to go to work". Although these statements would be hearsay on the issue, the rules of evidence are relaxed at preliminary hearings *(see, United States v Matlock,* 415 US 164; *Brinegar v United States,* 338 US 160) and, at any rate, no objection was raised to the statements. The question becomes whether these statements were sufficiently probative to meet defendant's burden

of establishing his reasonable expectation of privacy in the car.

Concededly, defendant was driving the vehicle on February 21, but the vehicle was seized on February 23. Moreover, according to Morris Di Lucchio, Sr., defendant "uses it to go to work", but there was no testimony as to how often defendant worked, or what the hours or days were, and it is noteworthy that the vehicle was seized at 7:00 P.M., after ordinary business hours. Nor is there any testimony that the scope of the father's implicit permission extended beyond normal working hours, any intimation that defendant had his own set of keys or could exclude others, or any evidence that the doors were indeed locked when the car was seized. In view of the paucity of evidence and the fact that the car was seized on a public street, we conclude that defendant failed to carry his burden of establishing on the record a basis for a finding that he had a legitimate expectation of privacy and the hearing court was amply justified in concluding that he had no standing. In this regard, this court has recently found that a defendant who paid $100 per month for occasional use of a jeep had no standing to suppress cocaine seized therein when he did not own the jeep, did not possess keys thereto, did not allege he could exclude others and the doors were unlocked when the cocaine was seized (see, People v Cacioppo, supra; see also, People v Ponder, supra [defendant grandson had no reasonable expectation of privacy in his grandmother's home where he did not live, occasionally spent the night but was not staying on the date of search and seizure]; People v Eleby, 97 AD2d 798 [defendant failed to demonstrate at hearing a legitimate expectation of privacy in his brother's apartment]).

We have considered defendant's remaining contentions and find them to be without merit. Lazer, J. P., O'Connor, Weinstein and Niehoff, JJ., concur.